1  TANJA L. DARROW, Bar No. 175502
   tdarrow@littler.com
2  LITTLER MENDELSON, P.C.
   633 West 5th Street
3  63rd Floor
   Los Angeles, CA  90071
4  Telephone:  213.443.4300
   Facsimile:   213.443.4299
5
   JYOTI MITTAL, Bar No. 288084
6  jmittal@littler.com
   LITTLER MENDELSON, P.C.
7  2049 Century Park East
   5th Floor
8  Los Angeles, CA  90067
   Telephone:  310.553.0308
9  Fax No.:      310.553.5583

10 Attorneys for Defendant
   STARBUCKS CORPORATION D/B/A
11 STARBUCKS COFFEE COMPANY (erroneously
   named as STARBUCKS CORPORATION and
12 STARBUCKS COFFEE COMPANY as separate
   entities)

13

14              UNITED STATES DISTRICT COURT

15             CENTRAL DISTRICT OF CALIFORNIA

16 KEVIN BRISCOE,                    Case No.  2:17-cv-04832-JAK (JPRx)

17              Plaintiff,           ASSIGNED TO HON. JOHN A.
                                     KRONSTADT
18 v.
                                     **DEFENDANT STARBUCKS
19 STARBUCKS COFFEE COMPANY;         CORPORATION'S MOTION FOR
   and DOES 1-20; Inclusive,         SANCTIONS AGAINST KEVIN
20                                   BRISCOE FOR SPOLIATION OF
              Defendants.            EVIDENCE**
21
                                     Date:        July 2, 2018
22                                   Time:        8:30 a.m.
                                     Courtroom: 10B
23
                                     Complaint Filed:  August 9, 2016 (Los
24                                   Angeles County Superior Court)
                                     Trial Date: None Set
25

26

27

28

**TABLE OF CONTENTS**

**PAGE**

I.   INTRODUCTION ...................................................................................................... 1

II.  BACKGROUND FACTS ......................................................................................... 2

   A.   Procedural Background and Chronology ...................................................... 2

      1.   Starbucks Coached Plaintiff Throughout His Employment For Communication and Performance Deficiencies ........................ 2

      2.   March 30, 2015 Performance Concerns and Expectations Memorandum ................................................................................... 3

      3.   Plaintiff is Placed on a Performance Improvement Plan ............... 3

      4.   Plaintiff's Resignation and Lawsuit .............................................. 4

      5.   Starbucks Demanded Production of the Recordings and Notes ............................................................................................... 4

      6.   Plaintiff Testified He Recorded Meetings with Rivers, Rogers and Sundquist Including the December Meeting Where He Now Claims He Raised the Issue of Discrimination ................................................................................. 5

      7.   Plaintiff Also Testified He Took Notes Regarding the Alleged Instances of Discrimination ............................................ 6

   B.   Plaintiff Is a Repeat Litigant ...................................................................... 7

III. LEGAL ARGUMENT ............................................................................................. 8

   A.   The Court Has Inherent Authority to Issue Sanctions Where a Party Loses or Destroys Evidence After Notice of the Duty to Preserve ..................................................................................................... 8

   B.   Plaintiff Violated His Duty to Preserve Evidence ...................................... 9

   C.   The Evidence Was Highly Relevant .......................................................... 11

   D.   Starbucks Is Severely Prejudiced By the Destruction of the Evidence ..................................................................................................... 12

   E.   Plaintiff's Spoliation Was Willful ............................................................ 14

   F.   Dismissal is Appropriate Because Lesser Sanctions are Inadequate to Remedy the Starbucks' Prejudice ........................................................ 15

   G.   Federal Rule 37(e) Also Provides for Sanctions for Spoliation of Electronically Stored Information .............................................................. 17

IV.  CONCLUSION ....................................................................................................... 19

# TABLE OF AUTHORITIES

**PAGE**

## Cases

*Allstate Ins. Co. v. Sunbeam Corp.*,
  53 F.3d 804 (7th Cir. 1995) .................................................................................. 9

*Anheuser–Busch, Inc. v. Natural Beverage Distribs.*,
  69 F.3d 337 (9th Cir.1995) ............................................................................... 16

*Apple, Inc. v. Samsung Electronics Co.*,
  Ltd., 888 F. Supp. 2d 976 (N.D. Cal. 2012) ............................................... 12

*Cyntegra, Inc. v. Idexx Labs., Inc.*,
  No. 06 Civ. 4170, 2007 WL 5193736 (C.D. Cal. Sept. 21, 2007) ........................ 10

*Douglas v. Anderson*,
  656 F.2d 528 (9th Cir. 1981) ............................................................................. 12

*Financial Security, Inc. v. Freedom Equity Group, LLC*,
  2016 WL 5870218 (N.D. Cal. October 7, 2016) ...................................................... 18

*Fjelstad v. Am. Honda Motor Co., Inc.*,
  762 F.2d 1334 (9th Cir. 1985) ............................................................................ 9

*Glover v. BIC Corp.*,
  6 F.3d 1318 (9th Cir. 1993) ........................................................................... 8, 9

*Guthrey v. State of Calif.*,
  63 Cal. App. 4th 1108 (1998) ............................................................................ 13

*Guz v. Bechtel Nat'l, Inc.*,
  24 Cal. 4th 317 (2000) ....................................................................................... 12

*Henry v. Gill Indus., Inc.*,
  983 F.2d 943 (9th Cir. 1993) ............................................................................... 9

*Hugler v. Southwest Fuel Mgmt., Inc.*,
  2017 WL 8941163, at *8 (C.D. Cal. May 2, 2017) .............................................. 18

*Internmatch, Inc. v. Nxtbigthing, LLC*,
  No. 14-CV-05438-JST, 2016 WL 491483 (N.D. Cal. Feb. 8, 2016),
  *appeal dismissed* (June 10, 2016) .................................................................... 18

# TABLE OF AUTHORITIES
### (CONTINUED)

PAGE

*Kronisch v. United States*,
  150 F.3d 112 (2d Cir. 1998) ...................................................... 9

*Leon v. IDX Sys. Corp.*,
  464 F. 3d 951 (9th Cir. 2006) ........................................... *passim*

*Leon v. IDX Sys. Corp.*,
  No. C03-1158 ........................................................................ 8

*Little v. United Techs., Carrier Transicold Div.*,
  103 F.3d 956 (11th Cir. 1997) ................................................ 13

*Matthew Enterprise, Inc. v. Chrysler Group LLC*,
  Case No. 13-cv-04236-BLF-PSG, 2016 WL 2957133 (N.D. Cal. May
  23, 2016) ............................................................................. 17

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973).............................................................. 13

*Mosaid Technologies Inc. v. Samsung Electronics Co.*,
  348 F. Supp. 2d 332 (D.N.J. 2004).................................... 12, 16

*In re Napster, Inc. Copyright Litig.*,
  462 F. Supp. 2d (N.D. Cal. 2006).......................................... 9, 17

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*,
  685 F. Supp. 2d 456 (S.D.N.Y. 2010), *abrogated on other grounds by*
  *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135 (2d Cir.
  2012) ............................................................................. 10, 11

*Silvestri v. Gen. Motors Corp.*,
  271 F.3d 583 (4th Cir. 2001) .................................................. 8

*State Farm Fire & Cas. Co. v. Broan Manuf. Co., Inc.*,
  523 F. Supp. 2d 992 (D. Ariz. 2007) ...................................... 16

*Treppel v. Biovail Corp.*,
  249 F.R.D. 111 (S.D.N.Y. 2008)............................................ 11

*TRW, Inc. v. Super. Ct.*,
  25 Cal. App. 4th 1834 (1994)................................................ 14

TABLE OF AUTHORITIES
(CONTINUED)

PAGE

*Unigard Security Ins. Co. v. Lakewood Engineering & Mfg. Corp.*,
   982 F.2d. 363 (9th Cir. 1992) ................................................................8

*U.S. v. Kitsap Physicians Serv.*,
   314 F.3d 995 (9th Cir. 2002) ...............................................................14

*World Courier v. Barone*,
   2007 WL 1119196 (N.D. Cal. Apr. 16, 2007)........................................9

*Yanowitz v. L'Oreal USA, Inc.*,
   36 Cal. 4th 1028 (2005) .......................................................................13

*Zubulake v. UBS Warburg LLC*,
   220 F.R.D. 212 (S.D.N.Y. 2003).............................................................9

**Statutes**

California Penal Code section 632 ...............................................................15

**Other Authorities**

FED. R. CIV. P. 37 ................................................................................*passim*

111.

## I.   INTRODUCTION

On August 9, 2016, Plaintiff Kevin Briscoe ("Plaintiff"), an African American repeat litigant, filed this lawsuit alleging racial discrimination against Starbucks Corporation ("Starbucks").   The grounds for Plaintiff's lawsuit is that his manager, Angela Rivers ("Rivers"), treated him differently than other, non-African American partners[1].   Plaintiff testified under oath that he journaled detailed notes and he audio recorded a number of meetings with the alleged bad actors (without their knowledge or consent) to support his claims of discrimination.   Declaration of Jyoti Mittal ("Mittal Decl.") ¶ 5, Ex. J at 205:11-206:10; 211:1-18; 213:9-20; 214:20-215:14; 277:6-12; 277:22-278:19.

Once Starbucks became aware of the journaled notes and audio recordings, it asked for them to be produced and Plaintiff admitted that he "trashed" the journaled notes.   Additionally, once Plaintiff realized that his recorded conversations with his manager and Starbucks Partner Resources did not support his claims, those audio recordings suddenly disappeared due to the theft of plaintiff's phone.   *Id.* at 212:10-214:17.   The alleged phone theft occurred virtually one year (and perhaps longer) after plaintiff had retained legal counsel and decided to file the complaint with the DFEH. Request for Judicial Notice ("RJN"), Ex. A.

The content of both the journal and the recorded conversations would serve as critical evidence in this matter where certain facts are disputed.   By intentionally destroying the journaled notes and the audio recordings, Plaintiff and his counsel have deprived Starbucks access to critical probative evidence.

The evidence in this case reveals the nature of Plaintiff's complaints is evolving throughout this litigation.   His credibility is undoubtedly in question.   Plaintiff paints a far worse picture of his experience with Starbucks than what actually happened.   He is either prone to hyperbole, at best, or blatantly untruthful, at worst.   The best evidence

---

[1] All Starbucks "employees" are referred to as "partners."

1    to make that distinction is the journal and the audio recordings – both of which are

2    now forever gone due to Plaintiff's blatant destruction of evidence.

3        Compounding Plaintiff's shocking destruction of highly probative evidence is

4    that, as a repeat litigant, Plaintiff unambiguously contemplated the instant lawsuit

5    when he was journaling the notes and making the audio recordings.  He clearly

6    recognized their importance.  In fact, in Plaintiff's resignation letter, he informed

7    Starbucks he was retaining legal counsel.  Less than two months after Plaintiff's

8    resignation, and long before the destruction occurred, Plaintiff's counsel (the same

9    counsel that represented him in his previous race discrimination lawsuit against

10   another employer) filed a complaint against Starbucks with the California Department

11   of Fair Employment and Housing ("DFEH").  RJN, Ex. A

12       Plaintiff's complete disregard for the federal rules of discovery is astounding,

13   especially given his litigation experience and the fact that he was represented by legal

14   counsel throughout.  Plaintiff's intentional destruction of evidence clearly constitutes

15   sanctionable conduct.

16       As a result of Plaintiff's willful destruction of evidence, Starbucks requests the

17   Court enter an order dismissing this matter entirely.  Alternatively, Starbucks requests

18   that this Court enter an order for an adverse jury instruction, consistent with federal

19   law, and Federal Rules of Civil Procedure Rule 37(e).

20   **II.    BACKGROUND FACTS**

21       **A.    Procedural Background and Chronology**

22           **1.    Starbucks Coached Plaintiff Throughout His Employment For**

23           **Communication and Performance Deficiencies.**

24       Throughout Plaintiff's career at Starbucks, he received regular coaching and

25   feedback for communication and performance deficiencies, which he failed to remedy.

26   Declaration of Angela Rivers ("Rivers Decl.") ¶¶ 4-5; Declaration of Sarah Rogers

27   ("Rogers Decl.") ¶ 3-5; Declaration of Heidi Sundquist ("Sundquist Decl.") ¶¶ 4-6.

28

Partner Resources Director, Sarah Rogers, met with plaintiff on December 12, 2014, to discuss his development at Starbucks and identify potential resources for his continued growth (the "December Meeting").   Rogers Dec. ¶¶ 3-4.   During the December Meeting, Rogers suggested Plaintiff conduct a 360 Peer Review to provide him additional insight into how he was perceived by other partners.  *Id.*   During the December Meeting, Plaintiff never mentioned he believed Rivers was discriminating against him on any basis – and certainly not because of his race.  *Id.*

### 2. March 30, 2015 Performance Concerns and Expectations Memorandum.

Plaintiff's performance deficiencies continued without improvement.   Rivers Decl. ¶ 4; Rogers Decl. ¶ 5.   Accordingly, on March 30, 2015, Starbucks issued Plaintiff a Performance Concerns and Expectations Memorandum ("March 30th Memo").   Rogers Decl. ¶ 4; Rivers Decl. ¶ 5.   The March 30th Memo was given to Plaintiff by Rivers and Rogers during an in-person meeting.   Rogers Decl. ¶ 4; Rivers Decl. ¶ 5.

### 3. Plaintiff is Placed on a Performance Improvement Plan.

Plaintiff's performance did not improve after receipt of the March 30th Memo, and indeed deteriorated further.   Rivers Dec. ¶ 5; Sundquist Decl. ¶ 4.   Accordingly, on May 12, 2015, Starbucks decided to place Plaintiff on a Performance Improvement Plan ("PIP").   *Id.*   On June 4, 2015, Rivers and Heidi Sundquist ("Sundquist"), another Partner Resources Manager, issued Plaintiff the PIP during an in-person meeting.  *Id.*

Plaintiff provided Rivers and Sundquist his response to the PIP on June 9, 2015, and Plaintiff demanded an independent investigation into "unfair treatment and consciously biased actions and behaviors towards [him]" by Rivers.   Rivers Dec. ¶ 6; Sundquist Decl. ¶ 6, Ex. A.   Plaintiff told Rivers and Sundquist he recorded everything that was discussed at the meeting.   Rivers Dec. ¶ 6; Sundquist Decl. ¶ 6. He also told them that he previously recorded many of his conversations with them.

Rivers Dec. ¶ 6; Sundquist Decl. ¶ 6.  Plaintiff's recordings were made without the knowledge or consent of those being recorded in violation of California law.  Rivers Dec. ¶¶ 5, 8, Ex. C; Sundquist Decl. ¶ 6; Rogers Decl. ¶ 6.  June 9, 2015, was the first instance Plaintiff raised discrimination (without specifying the type of discrimination) as a potential issue.  Rogers Decl. ¶ 7; Sundquist Decl. ¶ 6; Rivers Decl. ¶ 7.

### 4.    Plaintiff's Resignation and Lawsuit.

On **July 20, 2015**, Plaintiff resigned from his employment at Starbucks without warning or notice.  Sundquist Decl. ¶ 8, Ex. B.  In his letter of resignation, Plaintiff advised Starbucks "*[i]n full disclosure, at [the time of his last day], I will be retaining legal counsel.*"  *Id.* (emphasis added).

On **September 14, 2015**, counsel for Plaintiff filed a DFEH complaint of employment discrimination against Starbucks ("DFEH Complaint").  RJN, Ex. A.

On **August 9, 2016**, counsel for Plaintiff filed the instant action, which was served on **May 31, 2017**.

### 5.    Starbucks Demanded Production of the Recordings and Notes.

On September 7, 2017, Starbucks served Plaintiff with Requests for Production, which sought all documents, including audiotapes and notes, supporting his claims.  Mittal Decl. ¶ 3, Ex. E at 3:7-16, 7:6-9, 8:3-8.  After two extensions to respond to Starbucks' Requests for Production, on November 24, 2018, Plaintiff responded to each of Starbucks' requests stating he "produces all documents . . . in full response" to each request."  *Id.* at ¶ 3, Exs. F; G at 5:20-26, 7:3-23.  However, Plaintiff's production and supplemental production did not include his recordings or journal notes.  *Id.* at ¶¶ 3-4.

On January 17, 2018, Starbucks *specifically* requested Plaintiff to produce any audio recordings made by him or on his behalf concerning the subject matter of his complaint.  Mittal Decl. ¶ 4, Ex. H at 4:19-23.  Plaintiff failed to timely respond to Starbucks' request, and consequently, *waived any objections*.  *Id.*  Finally, on March 6, 2018, Plaintiff responded stating that "[a]fter conducting a diligent search, no

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

documents responsive to this Request exist." *Id.* at ¶ 4, Ex. I at 2:16-20.

### 6. Plaintiff Testified He Recorded Meetings with Rivers, Rogers and Sundquist Including the December Meeting Where He Now Claims He Raised the Issue of Discrimination.

There is no dispute that once Plaintiff was placed on a PIP, instead of taking steps to correct his performance deficiencies, he opted to resign. No one at Starbucks asked him to nor suggested that he resign. In fact, Starbucks worked tirelessly to assist Plaintiff's professional growth and development, offering him countless opportunities to improve. However, he refused to accept responsibility for his own shortcomings and now claims that he was mistreated by his manager and constructively forced to resign. *Id.* at ¶ 5, Ex. J at 205:11-206:10; 211:1-18; 213:9-20; 214:20-215:14; 277:6-12; 277:22-278:19. Plaintiff has now mischaracterized virtually every coaching communication by his manager and the Starbucks Partner Resources support team as retaliatory or otherwise discriminatory. However, Plaintiff's rendition of the facts fails to comport with the documentary evidence. Notwithstanding, Plaintiff testified that **he recorded as many conversations as he could with Rivers, Sundquist and Rogers** – "probably six to ten times" – without their knowledge or consent, including the December Meeting. *Id.* at 205:11-206:10, 211:2-18; 213:9-20.

With respect to the December Meeting, Plaintiff testified:

> Q. It's your testimony that you complained regarding Angela Rivers' treatment of you. **Did you specifically tell anyone that you believed that she mistreated you based upon your race**?
>
> A. **I did, to Sarah on my one-on-one with her**.
>
> Q. Sarah Rogers?
>
> A. Yes.
>
> . . .
>
> Q. Which one-on-one with Sarah Rogers did you tell her that you believe that Angela Rivers' treatment of you was based upon your race?

A.    We had a one-on-one at Starbucks in December ·of 2014, I believe, and that was also one of the times where I complained about the treatment.

Q.    No one else was present?

A.    No.

Q.    **Did you record that conversation**?

A.    **I did**.

Q.    Do you know if anyone was ever disciplined as a result of the complaints that you made?

A.    I have no idea if Angela was disciplined for the complaints that I made.  I have no idea.

Q.    Do you know if anything whatsoever was done as a result of any of the concerns that you made other than the investigation?

A.    **My complaints, I don't feel my complaints were addressed**.

Q.    You wanted more than the investigation done?

A.    **I wanted the retaliation and discrimination to stop, and that's what I clearly communicated to Sarah and to Heidi and to Angie**.

*Id.* at 277:6-12; 277:22-278:19 (emphasis added).

Plaintiff testified that he recorded the conversations with Rivers, Rogers, and Sundquist on his iPhone.  *Id.* at 211:19-23.  However, Plaintiff testified that ***after he filed the lawsuit*** (within the last year and a half, *i.e.*, October 2016) his iPhone 5, which was "on its last leg," was stolen.  *Id.* at 212:10-214:17.  Plaintiff and his counsel failed to take any steps whatsoever to preserve the recordings in any manner or to retrieve the "stolen" iPhone.  *Id.* at 211:22-214:17.

### 7.    Plaintiff Also Testified He Took Notes Regarding the Alleged Instances of Discrimination.

During Plaintiff's second day of deposition he also testified he took notes regarding the alleged discrimination as follows:

Q:      During the time that you were employed for Starbucks, did you keep a journal?

A.      I'm sorry?

Q:      Did you keep a journal?

A:      I kept notes, sure.

Q:      Did you keep notes of the things that you would characterize as mistreatment?

A:      I'm sure I did, yeah.

. . .

Q:      Where's your journal?

A:      It's - - I don't have it anymore.

Q:      What happened to it?

A:      It's gone.  It's trashed.  I've moved since then, and a lot of that stuff has been trashed.

Q:      When did you trash your journal?

A:      Let's see.  I moved - - it's been over year and a half, two years ago.

Q:      Why didn't you keep it?

A:      Was no need to keep it.

*Id.* at 307:11-308:12.

The actual content of the notes is not retrievable.

**B.      Plaintiff Is a Repeat Litigant.**

Plaintiff was familiar with his duty to preserve evidence because at all relevant times he was represented by legal counsel and he previously sued an employer for racial discrimination.  Specifically, in *Briscoe v. DPMS, Inc. et al.*, Superior Court of the State Of California, County Of Contra Costa, Case No. C 10-02532, Plaintiff filed an almost identical lawsuit against a former employer, and was represented by the same counsel.  RJN ¶ B; Mittal Decl. ¶ 3, Ex. F, ¶5, Ex. J at 14:9-16:12.   In the *DPMS, Inc.* lawsuit, Plaintiff alleged causes of action for race discrimination, religious discrimination, retaliation, and wrongful discharge.  RJN, ¶ B.   Plaintiff

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

1   testified the *DPMS, Inc.* lawsuit "resolved amicably . . . favorably in my favor" by
2   means of settlement.  Mittal Decl. ¶ 5, Ex. J at 15:14-20; 16:11-12.  Plaintiff's prior
3   litigation experience and his admission that he created the recordings because things
4   were feeling "litigious," strongly suggest he recorded the conversations with the intent
5   to use them as evidence.  Declaration of Emily Schultz ("Schultz Decl.") ¶ 4, Ex. D at
6   STAR 0001569.  This case fits squarely within the context of the law prohibiting
7   spoliation.

8   **III.   LEGAL ARGUMENT**

9   **A.   The Court Has Inherent Authority to Issue Sanctions Where a Party**
10  **Loses or Destroys Evidence After Notice of the Duty to Preserve.**

11  Spoliation of evidence is the destruction of relevant evidence while on notice of
12  a claim or potential claim.  *Unigard Security Ins. Co. v. Lakewood Engineering &*
13  *Mfg. Corp.*, 982 F.2d. 363, 368-369 (9th Cir. 1992).  In a diversity action such as this,
14  federal law of spoliation applies.  *See Silvestri v. Gen. Motors Corp.*, 271 F.3d 583,
15  590 (4th Cir. 2001) ("federal law of spoliation applies [in a diversity action] because
16  ... the power to sanction for spoliation derives from the inherent power of the court,
17  not substantive law."); *Glover v. BIC Corp.*, 6 F.3d 1318, 1329-30 (9th Cir. 1993)
18  (applying federal spoliation standard in diversity action).

19  The Court has the authority to sanction Plaintiff for spoliating evidence under
20  "the inherent power of federal courts to levy sanctions in response to abusive litigation
21  practices," as well as under Rule 37.  *Leon v. IDX Sys. Corp.*, 464 F. 3d 951, 958 (9th
22  Cir. 2006); Fed. R. Civ. P. 37.  Before sanctioning a party for spoliation, the Court
23  must first determine whether the spoliator possessed a duty to preserve the evidence at
24  issue.  *Leon v. IDX Sys. Corp.*, No. C03-1158 P, 2004 WL 5571412, at *3 (W.D.
25  Wash. Sept. 30, 2004), aff'd, 464 F.3d 951 (9th Cir. 2006).  Upon finding a duty to
26  preserve, the Court considers the prejudice suffered by the non-spoiling party and the
27  level of culpability of the spoliator.  *See id.*  A party's spoliation need not have been in
28  bad faith to warrant the imposition of sanctions.  *See Glover*, 6 F.3d at 1329; *In re*

1   *Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d, 1060, 1066 (N.D. Cal. 2006).

2       Courts may impose sanctions against a party that merely had notice that the

3   destroyed evidence was *potentially* relevant to litigation.  *See Glover*, 6 F.3d at 1329;

4   *see also Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993) (*quoting Fjelstad*

5   *v. Am. Honda Motor Co., Inc.*, 762 F.2d 1334, 1341 (9th Cir. 1985)) (default judgment

6   appropriate in the absence of bad faith where the punished conduct was merely within

7   the litigant's control).  That said, the spoliator's motive or degree of fault is relevant to

8   the court's choice of sanctions.  *Id.* at 1066-67.  Appropriate sanctions include an

9   adverse inference instruction, exclusion of evidence proffered by the spoiling party,

10  and dismissal or default.  *Leon*, 464 F.3d at 958; *Glover*, 6 F.3d at 1329; *see also*

11  *Allstate Ins. Co. v. Sunbeam Corp.*, 53 F.3d 804, 806-07 (7th Cir. 1995) (affirming

12  that destruction of material evidence warranted dismissal).

13      Here, Plaintiff effectively destroyed highly probative evidence after

14  contemplating and filing this lawsuit.  Accordingly, the Court has inherent authority to

15  sanction Plaintiff for his misconduct.

16      **B.    Plaintiff Violated His Duty to Preserve Evidence.**

17      Plaintiff was on notice of his obligation to preserve evidence as of, ***at least,*** July

18  20, 2015, when he advised Starbucks he was seeking legal counsel.[2]  Sundquist Decl.

19  ¶ 8, Ex. B.  The duty to preserve material evidence arises "not only during litigation

20  but also extends to that period before the litigation when a party reasonably should

21  know that the evidence may be relevant to anticipated litigation."  *World Courier v.*

22  *Barone*, 2007 WL 1119196, at *1 (N.D. Cal. Apr. 16, 2007) (citing *Kronisch v.*

23  *United States*, 150 F.3d 112, 126 (2d Cir. 1998)); *Zubulake v. UBS Warburg LLC*, 220

24  F.R.D. 212, 217 (S.D.N.Y. 2003) ("anyone who anticipates being a party or is a party

25  to a lawsuit must not destroy unique, relevant evidence that might be useful to an

26

27  [2] At the latest, Plaintiff was on notice of his duty to preserve on September 14, 2015, when Plaintiff's counsel filed the DFEH Complaint.  RJN, Ex. A; Mittal Decl. ¶ 3, Ex.

28  F.

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

adversary"). A plaintiff's duty is more often triggered before litigation commences, in large part because plaintiffs control the timing of litigation. *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 464-466 (S.D.N.Y. 2010), *abrogated on other grounds by Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135 (2d Cir. 2012); *Cyntegra, Inc. v. Idexx Labs., Inc.,* No. 06 Civ. 4170, 2007 WL 5193736, at *3 (C.D. Cal. Sept. 21, 2007) (holding because plaintiffs control when litigation begins, they "must necessarily anticipate litigation before the complaint is filed").

Plaintiff cannot reasonably claim that he did not have a duty to preserve the destroyed evidence. On July 20, 2015, Plaintiff informed Starbucks he would be retaining legal counsel for the sole purpose of pursuing a lawsuit against them. In fact, on July 2, 2015, Plaintiff advised the independent investigator that he created the recordings because things were feeling "litigious." Declaration of Emily Schultz ¶ 4, Ex. D at STAR 0001569. Clearly, in light of Plaintiff's litigation history, ***the reason he secretively recorded his conversations*** with Rivers, Rogers and Sundquist, and journaled notes of supposed wrongdoing, ***was because he knew as early as December 2014 that he was going to file a lawsuit***. Plaintiff filed the *DFEH Complaint* within two months of his resignation, and then his lawsuit. Curiously, Plaintiff destroyed all journal notes and all audio recordings ***after he had taken affirmative action to litigate this matter.*** Starbucks sought the recordings and notes in discovery, and Plaintiff failed to produce them – claiming the recordings did not exist. Plaintiff unquestionably had notice of his duty to preserve.

Plaintiff's failure to preserve evidence is all the more egregious given that he was, at all relevant times, represented by counsel who represented him in his prior race discrimination lawsuit. Just as Starbucks is required to preserve all documents and potential evidence, so too must Plaintiff. It is evident that Plaintiff and his counsel failed to comply with their obligations to ensure that this relevant evidence was preserved. Indeed, in Plaintiff's prior race discrimination lawsuit, he

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

10.

*participated in the discovery process*, including his own deposition.   Mittal Decl. ¶ 5, Ex. J at 15:14-20; 16:11-12.  In addition to the fact that he was represented by legal counsel as soon as December 2014 for this lawsuit and had legal obligations to preserve relevant evidence, his prior litigation and discovery experience put him on notice that he was required to preserve and disclose all relevant information in this case – especially information he was creating.  Even if Plaintiff did not *personally* know any better than to back up his extremely probative recordings or "trash" his journal, his lawyers, who represented him as early as September 14, 2015, and likely earlier, certainly did.  *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 118 (S.D.N.Y. 2008); *see also Pension Comm.*, 685 F. Supp. 2d at 464-466 (holding once duty to preserve has attached, counsel's failure to advise party of the duty constitutes gross negligence for sanctions purposes).

Accordingly, Plaintiff (and his counsel) clearly violated his duty to preserve the audio recordings and notes.

## C.    The Evidence Was Highly Relevant.

The recordings and notes are unquestionably relevant to numerous disputed facts and issues in this case.  At the heart of Starbucks' defense is that Plaintiff's allegations quite literally did not happen.  Per Plaintiff's sworn testimony, his recordings include his complaints about racial discrimination and improper treatment (which led to the alleged retaliation against him), and his notes identify each instance he felt as though he was being discriminated against.  Mittal Decl. ¶ 5, Ex. J at 205:11-206:10, 211:2-18; 213:9-20; 277:6-12; 277:22-278:19; 307:11-21.  The recordings would create undisputable facts *conclusively establishing or refuting all of Plaintiff's claims*.  Additionally, the recordings could be invaluable to a jury that will be asked to decide, in part, (1) whether they agree with Starbucks' assessment of Plaintiff's conduct or Plaintiff's fabricated version, (2) whether Plaintiff actually complained about discrimination (which he did not), and (3) whether Plaintiff's contemporaneous notes suggest discrimination occurred.

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

11.

**D.    Starbucks Is Severely Prejudiced By the Destruction of the Evidence.**

When determining whether a party has been prejudiced, courts "look to whether the [spoliating party's] actions impaired [the non-spoliating party's] ability to go to trial or threatened to interfere with the rightful decision of the case." *Leon*, 464 F.3d at 959.   Prejudice may be found where a party is forced "to rely on incomplete or spotty evidence at trial." *Id.*  Courts in the Ninth Circuit presume prejudice from lost evidence:

> spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it. [I]f spoliation is shown, the burden of proof logically shifts to the guilty party to show that no prejudice resulted from the spoliation because that party is in a much better position to show what was destroyed and should not be able to benefit from its wrongdoing.

*Apple, Inc. v. Samsung Electronics Co.*, Ltd., 888 F. Supp. 2d 976, 993 (N.D. Cal. 2012) (internal quotation marks omitted) (citations omitted)).  In light of Plaintiff's (and his counsel's) failure to take reasonable steps to preserve the recordings and journal entries, the Court should presume the evidence was prejudicial to their prosecution of this case.

Even if prejudice isn't presumed, absent intervention by this Court, Starbucks suffered and will continue to suffer severe prejudice as a result of Plaintiff's spoliation.  First, as part of his *prima facie* case for race discrimination, Plaintiff must prove that the circumstances suggest a discriminatory motive for the adverse employment action.  *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 355 (2000); *Douglas v. Anderson*, 656 F.2d 528, 531 (9th Cir. 1981).  Plaintiff testified that he recorded many conversations with Rivers, Rogers, and Sundquist in which he complained about Rivers, including the December Meeting with Rogers wherein he claims he specifically complained about racial discrimination.  These conversations occurred when Plaintiff was provided career development coaching, the March 30th Performance Memorandum, and the PIP.  The recordings are highly relevant to

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

12.

1  illustrate Starbucks' legitimate nondiscriminatory reasons for its coaching and
2  issuance of PIP to Plaintiff – including Plaintiff's communication style when speaking
3  with Starbucks' management. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792,
4  802-05 (1973).

5  Furthermore, Starbucks disputes that Plaintiff complained about discrimination
6  at any point before June 9, 2015, or even suggested it. The recordings of the
7  conversations, including the December Meeting could prove or disprove this fact
8  issue. Specifically, the recordings would show Plaintiff did not complain about
9  discrimination, *because no discrimination occurred*. At the very least, if the
10  recordings were available, they would resolve all discrepancies in the conflicting
11  accounts of the recorded conversations. The absence of the recordings limits
12  Starbucks' ability to prove Plaintiff "changed his story," or in this instance, fabricated
13  the issues entirely.

14  Similarly, in order to prove retaliation, Plaintiff must show that he engaged in a
15  protected activity. *Guthrey v. State of Calif.*, 63 Cal. App. 4th 1108, 1125 (1998). To
16  have engaged in protected activity, Plaintiff must have had a ***reasonable belief*** that the
17  conduct of which he complained was unlawful. *Yanowitz v. L'Oreal USA, Inc.*, 36
18  Cal. 4th 1028, 1047 (2005). A plaintiff must "not only show that he ***subjectively*** (that
19  is, in good faith) ***believed*** that his employer was engaged in unlawful employment
20  practices," but also that his belief was "***objectively reasonable*** in light of the facts and
21  record presented." *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960
22  (11th Cir. 1997) (emphasis added). Here Plaintiff claims he complained on multiple
23  occasions about racial discrimination, that he was retaliated against as a result of those
24  complaints, **and he recorded the conversations in which he made the complaints**.
25  Starbucks disputes that Plaintiff ever complained about discrimination, in any manner,
26  prior to June 9, 2015. As with Plaintiff's discrimination claim, the recordings are
27  critical evidence to disprove Plaintiff's retaliation claim.

28

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

13.

Finally, because Plaintiff's constructive wrongful termination claim is derivative of his discrimination and retaliation claims, the recordings would likewise bar this claim as well. *TRW, Inc. v. Super. Ct.*, 25 Cal. App. 4th 1834 (1994) (finding that no cause of action for wrongful termination in violation of public policy was stated where the employer did not violate the constitutional or statutory provision asserted as the basis for the claim).

In sum, the recordings would dispel of Plaintiff's entire lawsuit because they would conclusively demonstrate he never complained to Starbucks about the alleged discrimination and would also be probative to Starbucks' defense that his claims were fabricated.

With respect to Plaintiff's journal, because the spoliation was ***intentional***, the Court need not make a finding of prejudice because it can be presumed that "the opposing party was prejudiced by the loss of information that would have favored its position." FED. R. CIV. P. 37(e) 2015 advisory committee's notes.   Nonetheless, Starbucks suffered and will continue to suffer prejudice as a result of Plaintiff's spoliation of his journal.   Plaintiff's intentional destruction of his journal entries, which were created contemporaneously with the allegedly improper conduct, deprive Starbucks the opportunity to challenge Plaintiff's current narrative with his actual written recounting of his experiences.

**E.     Plaintiff's Spoliation Was Willful.**

Once the duty to preserve is imposed, the knowing or reckless destruction of evidence constitutes spoliation. *U.S. v. Kitsap Physicians Serv.,* 314 F.3d 995, 1001 (9th Cir. 2002).   A party's destruction of evidence qualifies as willful spoliation if the party has "some notice that the documents were *potentially* relevant to the litigation before they were destroyed." *Leon*, 464 F.3d at 959.   Moreover, because "the relevance of ... [destroyed] documents cannot be clearly ascertained because the documents no longer exist," a party "can hardly assert any presumption of irrelevance as to the destroyed documents." *Id.*

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

14.

Here, the spoliation is unquestionably willful. *Plaintiff himself created* evidence of obvious (and critical) relevance. Mittal Decl. ¶ I, Ex. J at 205:11-206:10, 211:2-18; 213:9-20; 277:6-12; 277:22-278:19; 307:11-21; Schultz Decl. ¶ 4, Ex. D at STAR 0001569. Indeed, Plaintiff violated California Penal Code section 632 in order to record his conversations with Rivers, Rogers, and Sundquist, without their knowledge. Rivers Dec. ¶¶ 5, 8, Ex. C; Sundquist Decl. ¶ 6; Rogers Decl. ¶ 6. Plaintiff knew he was the only person in possession of the audio recordings. Mittal Decl. ¶ 5, Ex. J.at 211:22-214:17. He also knew he was the only person in possession of the contents of his journal. *Id.* at 307:11-308:12. Plaintiff nevertheless now admits the evidence was lost or destroyed. *Id.* 307:11-308:12; 212:3-9.

Additionally, the evidence created by Plaintiff was lost as a direct consequence of entirely foreseeable and preventable reasons. At a minimum, Plaintiff failed to take any number of rather obvious steps to assure that this evidence was not lost. Plaintiff could and should have made sure that some means of backing up the recordings was in place, but, shockingly, this was not done.

In sum, Plaintiff knew full well that litigation was imminent, *since he was pursuing it and specifically announced he was retaining counsel*. Given Plaintiff's claims, it is counterintuitive that he would fail to preserve the very evidence which— one might think—could have unquestionably proved his claims.

Accordingly, Plaintiff "losing" his recordings, and "trashing" of his journal, well after this action was initiated and/or contemplated provides the requisite culpable state of mind to allow sanctions for *willful* spoliation.

## F.    Dismissal is Appropriate Because Lesser Sanctions are Inadequate to Remedy the Starbucks' Prejudice.

Dismissal is an appropriate sanction when "a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings" because "courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

of justice." *Anheuser–Busch, Inc. v. Natural Beverage Distribs*., 69 F.3d 337, 348 (9th Cir.1995*); Leon*, 464 F.3d at 958.  Before imposing a dismissal, the district court should consider the following factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Id.*

Dismissal is appropriate here for a simple reason: "Although . . . lesser sanctions are feasible, they do not cure the prejudice caused to this litigation." *State Farm Fire & Cas. Co. v. Broan Manuf. Co., Inc.*, 523 F. Supp. 2d 992, 998 (D. Ariz. 2007) (ruling out evidence preclusion, adverse inferences, and a combination of both); *see also Mosaid Technologies Inc. v. Samsung Electronics Co.,* 348 F. Supp. 2d 332, 335 (D.N.J. 2004) ("Spoliation sanctions serve a remedial function by leveling the playing field or restoring the prejudiced party to the position it would have been without spoliation.").

First, "excluding evidence would be 'futile'" because the prejudice suffered by Starbucks stems from the *absence* of probative evidence and would reward Plaintiff by limiting the evidence of the alleged misconduct supporting Plaintiff's allegations. *Leon*, 464 F.3d at 960.  Additionally, "excluding evidence…does not account for the possibility that the [destroyed recordings and notes] contained additional evidence to support Defendant's theories of causation." *State Farm,* 523 F. Supp. 2d at 998.

Second, "fashioning a jury instruction that creates a presumption in favor of… [Starbucks] 'would leave Defendant[] equally helpless to rebut any material that…[Plaintiff] might use to overcome the presumption." *Id.*

Finally, no lesser sanction could "cure the fact that [Starbucks] is limited to evidence . . . that [Plaintiff] preserved" nor cure the fact that Plaintiff did not preserve the recordings and his notes that included highly probative information.  *Id.* at 998 ("Dismissal is the only sanction that addresses this final type of prejudice."). Therefore, the Court should issue terminating sanctions against Plaintiff.

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

In the alternative, Starbucks submits that the Court should order other sanctions as the Court determines are just and proper, including but not limited to evidence preclusion and/or a mandatory adverse inference instruction. *Cf. In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d at 1077 (granting preclusion sanctions but leaving the nature and extent of those sanctions to be determined).

## G.   Federal Rule 37(e) Also Provides for Sanctions for Spoliation of Electronically Stored Information.

In addition to its inherent powers, the Court is empowered to sanction a party who has lost or destroyed electronically stored information (ESI) under Federal Rule of Civil Procedure Rule 37(e).   If a party was obligated to preserve the lost information "in the anticipation or conduct of litigation" and the party "failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," then: (1) upon a finding of prejudice the court "may order measures no greater than necessary to cure the prejudice"; or (2) upon a finding of acting with intent to deprive another party of the evidence the court may presume the lost information was unfavorable to the party, or instruct the jury "it may or must presume the information was unfavorable to the party," or "dismiss the action or enter default judgment." FED. R. CIV. P. 37(e); *e.g., Matthew Enterprise, Inc. v. Chrysler Group LLC*, Case No. 13-cv-04236-BLF-PSG, 2016 WL 2957133 at *1 (N.D. Cal. May 23, 2016).

Under Federal Rule of Civil Procedure Rule 37(e), dismissal remains the only appropriate sanction.   There was no question that (1) litigation was reasonably anticipated (indeed the Complaint had been filed) when the recordings were destroyed; (2) Plaintiff and his counsel failed to take reasonable steps to preserve the recordings; (3) the recordings cannot be replaced or restored through additional discovery; and (4) the destruction of the recordings is severely prejudicial to Starbucks.

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

17.

Plaintiff's conduct constitutes Rule 37(e) willful spoliation of evidence warranting dismissal of his action – *i.e.,* intent to deprive.  When examining the "intent to deprive" element of Rule 37(e), courts hold a party is "culpable for spoliation, [when the party] . . . failed in their obligation to ensure that relevant evidence be preserved." *Internmatch, Inc. v. Nxtbigthing, LLC*, No. 14-CV-05438-JST, 2016 WL 491483, at *11 (N.D. Cal. Feb. 8, 2016), *appeal dismissed* (June 10, 2016); *Hugler v. Southwest Fuel Mgmt., Inc.*, 2017 WL 8941163, at *8 (C.D. Cal. May 2, 2017); *Financial Security, Inc. v. Freedom Equity Group, LLC*, 2016 WL 5870218, at * 2-3 (N.D. Cal. October 7, 2016) (awarding sanctions for spoliation of text messages under Fed. R. Civ. P. 37(e)(2).)

The court's reasoning in *Hugler* is instructive.  In *Hugler*, the court found defendants disregarded a litigation hold notice, ignored requests for the ESI, ***failed to take steps to preserve the evidence, and allowed the evidence to be deleted***.  2017 WL 8941163, at *4, 10 (emphasis added).  The *Hugler* court held the defendants' conduct supported the "reasonable inference that defendants acted with the *intent* to deprive the Secretary of the use of the videos." *Id.* at *10 (emphasis in original).

Here, Plaintiff's culpability exceeds that of the *Hugler* defendants.  As discussed above, Plaintiff himself created evidence, clearly in preparation for this litigation, and then either failed to take reasonable steps to preserve the evidence, or, conveniently "lost it."  Plaintiff's conduct and the surrounding circumstances lead to the logical conclusion that he intentionally deprived Starbucks of vital evidence. Therefore, the dismissal sanctions outlined in 37(e)(2) are warranted.

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

18.

## IV.   CONCLUSION

For all the foregoing reasons, Starbucks respectfully requests the Court to dismiss the action in its entirety or impose the other proposed sanctions against Plaintiff.

Dated:   May 21, 2018

*/s/ Jyoti Mittal*
TANJA L. DARROW
JYOTI MITTAL
LITTLER MENDELSON, P.C.
Attorneys for Defendant
STARBUCKS CORPORATION d/b/a
Starbucks Coffee Company
(erroneously named as STARBUCKS
CORPORATION and Starbucks Coffee
Company as separate entities)

Firmwide:154827628.1 055187.1066

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300