1   TANJA L. DARROW, Bar No. 175502
    tdarrow@littler.com
2   LITTLER MENDELSON, P.C.
    633 West 5th Street
3   63rd Floor
    Los Angeles, CA  90071
4   Telephone:  213.443.4300
    Facsimile:   213.443.4299
5
    JYOTI MITTAL, Bar No. 288084
6   jmittal@littler.com
    LITTLER MENDELSON, P.C.
7   2049 Century Park East
    5th Floor
8   Los Angeles, CA  90067
    Telephone:  310.553.0308
9   Fax No.:     310.553.5583

10  Attorneys for Defendant
    STARBUCKS CORPORATION D/B/A
11  STARBUCKS COFFEE COMPANY (erroneously
    named as STARBUCKS CORPORATION and
12  STARBUCKS COFFEE COMPANY as separate
    entities)
13

14                  UNITED STATES DISTRICT COURT

15                  CENTRAL DISTRICT OF CALIFORNIA

16  KEVIN BRISCOE,                        Case No.  2:17-cv-04832-JAK (JPRx)

17              Plaintiff,                ASSIGNED TO HON. JOHN A.
                                          KRONSTADT
18  v.
                                          **DEFENDANT STARBUCKS**
19  STARBUCKS COFFEE COMPANY;             **CORPORATION'S MEMORANDUM**
    and DOES 1-20; Inclusive,             **OF POINTS AND AUTHORITIES IN**
20                                        **SUPPORT OF MOTION FOR**
                                          **SUMMARY JUDGMENT OR, IN**
21              Defendants.               **THE ALTERNATIVE, PARTIAL**
                                          **SUMMARY JUDGMENT**
22
                                          Date:       July 16, 2018
23                                        Time:       8:30 a.m.
                                          Courtroom:  10B
24
                                          Complaint Filed:  August 9, 2016 (Los
25                                        Angeles County Superior Court)
                                          Trial Date: None Set
26

27

28

**TABLE OF CONTENTS**

PAGE

I.     INTRODUCTION ................................................................................. 1

II.    RELEVANT FACTUAL SUMMARY ................................................. 3

       A.    Plaintiff is Hired as a Licensed Store District Manager ........................ 3

       B.    Plaintiff Unsuccessfully Interviews for a Business Development
             Manager Position in the Branded Solutions Department ........................ 3

       C.    Throughout His Employment, Plaintiff Was Coached for
             Communication and Performance Deficiencies .................................... 4

             1.    Plaintiff's Performance Reviews Reflect Consistent and
                   Ongoing Feedback Regarding Plaintiff's Deficiencies ................. 4

             2.    Licensee Requests Plaintiff's Removal as DM at LAX
                   Marriott ............................................................................ 5

             3.    Licensees' Complaints About Plaintiff's Communications .......... 5

             4.    Plaintiff Improperly Certifies Licensee Employees Causing
                   Store Closure ..................................................................... 6

             5.    Deficient Work Routine, Calendaring, and Accuracy ................ 6

       D.    Plaintiff Fails to Improve His Performance Despite Opportunities .......... 6

             1.    Personal Development Plan and Peer 360 Reviews .................... 6

             2.    March 30, 2015 Performance Concerns and Expectations
                   Memorandum ..................................................................... 8

             3.    Starbucks Places Plaintiff on a PIP ....................................... 8

       E.    Plaintiff Requests an Independent Investigation Into Rivers .................. 8

       F.    Plaintiff Resigns After Receiving a Higher Paying Job ...................... 10

       G.    Plaintiff Has No Evidence That Any Actions Taken Regarding His
             Employment Were Related to His Race .......................................... 10

             1.    Coaching and PIP Did Not Relate to Plaintiff's Race ............... 10

             2.    BDM Position ................................................................... 11

             3.    Opportunities to Other Partners on His Team ........................ 11

III.   STANDARD FOR SUMMARY JUDGMENT ................................. 12

IV.    PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW ............... 13

       A.    Plaintiff's Claim for Discrimination Fails ...................................... 13

TABLE OF CONTENTS
(CONTINUED)

PAGE

1. Plaintiff Cannot Meet His Initial Burden ..................................... 13

   a. Plaintiff Was Not Performing His Job Duties Satisfactorily ........................................................................... 13

   b. Plaintiff Suffered No Adverse Employment Action That He Can Link to His Race ........................................... 14

     (1) There Is No Evidence of Any Preferential Treatment Based on Race ......................................... 14

     (2) The PIP Was Not An Adverse Employment Action ............................................................................... 15

     (3) Plaintiff Was Not Constructively Terminated ........ 16

     (4) Plaintiff's Voluntary Resignation Was Not An Adverse Employment Action .................................... 16

2. Starbucks' Employment Decisions Were for Legitimate, Nondiscriminatory Reasons ........................................................ 16

3. Plaintiff Cannot Establish Pretext ............................................... 17

B. Plaintiff's Retaliation Claim Also Fails ................................................ 20

1. Plaintiff Cannot Show Any Causal Connection Between His Alleged Complaints and Any Adverse Employment Action ....... 20

2. Plaintiff Cannot Demonstrate Pretext to Overcome Starbucks' Legitimate Business Reasons For all Employment Actions ..................................................................... 21

C. Plaintiff's Derivative Constructive Wrongful Termination Claim Fails ...................................................................................................... 22

D. Plaintiff Cannot Maintain a Claim for Punitive Damages ................... 22

V. CONCLUSION ................................................................................................... 24

**TABLE OF AUTHORITIES**

**PAGE**

**Cases**

*Akers v. Cnty of San Diego,*
  95 Cal. App. 4th 1441 (2002) ...................................................................... 14, 21

*Arteaga v. Brinks, Inc.,*
  163 Cal. App. 4th 327 (2008) ............................................................................ 18

*Carter v. Escondido Union High School Dist.,*
  148 Cal.App.4th 922 (2007) ............................................................................... 18

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986)............................................................................................ 12

*Chen v. County of Orange,*
  96 Cal. App. 4th 926 (2002) .............................................................................. 22

*Coghlan v. American Seafoods Co.,*
  LLC, 413 F.3d 1090 (9th Cir. 2005) ................................................................. 19

*Cohen v. Fred Meyer, Inc.,*
  686 F. 2d 793 (9th Cir. 1982) ............................................................................ 20

*Cruz v. Homebase,*
  83 Cal.App.4th 160 (2000) ................................................................................. 23

*Douglas v. Anderson,*
  656 F.2d 528 (9th Cir. 1981) ........................................................................ 13, 17

*Flait v. N. Am. Watch Corp.,*
  3 Cal. App. 4th 467 ............................................................................................ 21

*Foster v. Arcata Assocs., Inc.,*
  772 F.2d 1453 (9th Cir. 1985) ........................................................................... 16

*Guthrey v. State of Calif.,*
  63 Cal. App. 4th 1108 (1998) ............................................................................ 20

*Guz v. Bechtel Nat'l, Inc.,*
  24 Cal. 4th 317 (2000) ................................................................................. 13, 17

TABLE OF CONTENTS
(CONTINUED)

PAGE

*Horn v. Cushman & Wakefield Western Inc.,*
   72 Cal. App. 4th 798 (1999) .................................................................. 13, 17, 19, 21

*Horsford v. Bd. of Tr. of Cal. State Univ.,*
   132 Cal. App. 4th 359 (2005) .......................................................................... 13

*Jennings v. Marralle,*
   8 Cal. 4th 121 (1984) ................................................................................... 22

*Kelly-Zurian v. Wohl Shoe Co.,*
   22 Cal. App. 4th 397 (1994) .......................................................................... 23

*Kennedy v. Applause, Inc.,*
   90 F.3d 1477 (9th Cir. 1996) ......................................................................... 18

*Kerr v. Rose,*
   216 Cal. App. 3d 1551 (1990) ....................................................................... 20

*King v. United Parcel Svc.,*
   152 Cal. App. 4th 426 (2007) ........................................................................ 18

*Kolstad v. American Dental Ass'n,*
   527 US 526 (1999) ....................................................................................... 24

*Kortan v. Cal. Youth Authority,*
   5 F. Supp. 2d 843 (C.D. Cal. 1998) ........................................................... 15, 20

*Martin v. Lockheed Missiles & Space Co.,*
   29 Cal. App. 4th 1724 (1994) ..................................................................... 17, 20

*Mazalin v. Safeway, Inc.,*
   2012 U.S. Dist. LEXIS 16305 (E.D. Cal. Feb. 8, 2012) ....................................... 21

*McDonnell Douglas Corp. v. Green,*
   411 U.S. 792 (1973) ............................................................................... 13, 15, 17

*McRae v. Department of Corrections & Rehabilitation,*
   142 Cal. App. 4th 377 (2006) ..................................................................... 15, 21

*Morgan v. Regents of Univ. of Calif.,*
   88 Cal. App. 4th 52 (2000) ..................................................................... 19, 20, 21

# TABLE OF CONTENTS
(CONTINUED)

PAGE

*Nazir v. United Airlines, Inc.*,
 178 Cal. App. 4th 243 (2009) ................................................................ 19

*Proud v. Stone*,
 945 F.2d 796 (4th Cir. 1991) ................................................................ 19

*Real v. Continental Group, Inc.*,
 627 F. Supp. 434 (N.D. Cal. 1986) ........................................................ 23

*Sada v. Robert F. Kennedy Med. Cntr.*,
 56 Cal. App. 4th 138 (1997) ................................................................ 17

*Smolen v. Deloitte, Haskins & Sells*,
 921 F.2d 959 (9th Cir. 1990) ................................................................ 12

*Steckl v. Motorola, Inc.*,
 703 F.2d 392 (9th Cir. 1983) ................................................................ 17

*Texas Dep't of Cmty. Affairs v. Burdine*,
 450 U.S. 248 (1981) .................................................................... 14, 16

*Thomas v. Dept. of Corr.*,
 77 Cal. App. 4th 507 (2000) ................................................................ 14

*Tomaselli v. Transamerica Ins.*,
 25 Cal. App. 4th 1269 (1994) .............................................................. 22

*TRW, Inc. v. Super. Ct.*,
 25 Cal. App. 4th 1834 (1994) .............................................................. 22

*Turner v. Anheuser-Busch, Inc.*,
 7 Cal. 4th 1238 (1994) ...................................................................... 16

*Wallis v. J.R. Simplot Co.*,
 26 F.3d 885 (9th Cir. 1994) ................................................................ 17

*West v. Bechtel Corp.*,
 96 Cal. App. 4th 966 (2002) ................................................................ 19

*White v. Ultramar, Inc.*,
 21 Cal.4th 563 (1999) ...................................................................... 23

**TABLE OF CONTENTS**
(CONTINUED)

PAGE

*Yanowitz v. L'Oreal USA, Inc.,*
   36 Cal. 4th 1028 (2005) ........................................................... 14

**Statutes**

CAL. CIV. CODE § 3294(a) ........................................................ 23

CAL. CIV. CODE § 3294(b) ........................................................ 23

California Fair Employment and Housing Act ................................. 14, 18, 20

**Other Authorities**

CACI No. 3945 ....................................................................... 24

FED. R. CIV. P. 56 ................................................................... 12

## I.   INTRODUCTION

Starbucks Corporation's ("Starbucks") Mission is as follows:

> With our partners,[1] coffee, and customers at our core, we live these  values:
>
> *Creating a culture of warmth and belonging, where everyone is welcome.*
>
> Acting with courage, challenging the status quo and finding new ways to grow our company and each other.
>
> *Being present, connecting with transparency, dignity and respect.*
>
> *Delivering our very best in all we do, holding ourselves accountable for results.*
>
> We are performance driven, through the lens of humanity.

Request for Judicial Notice ("RJN") ¶ 1, Ex. A (emphasis added).

Plaintiff, an African American former Licensed Store District Manager, failed to conduct himself in accordance with Starbucks' Mission.  Specifically, Plaintiff failed to create a culture of warmth and belonging, patronized and disrespected clients and partners, and failed to take accountability for any of his many performance deficiencies.  In fact, Plaintiff's improper conduct escalated to the point where several clients (Licensees[2]) complained Plaintiff harassed and "bullied" their employees.  One client even demanded that Starbucks remove Plaintiff from his District Manager role at its store *because Plaintiff yelled at the client's employee until she cried, then argued with the customer that came to her defense.*

Instead of taking accountability for his behavior or correcting his conduct,

---

[1] All Starbucks "employees" are referred to as "partners."

[2] Similar to a franchise, Starbucks licenses its brand and products to Licensed Stores run by other companies (Licensees), including, but not limited to, Vons, Ralphs, Marriott, and Disney.  [Starbucks' Statement of Uncontroverted Facts ("SUF") 1.] For brevity, each factual citation refers to the first reference to the fact in the SUF. These stores license the Starbucks brand, sell its products, and are responsible for managing their retail operations.  [SUF 2.]

Plaintiff responded defensively.   Ultimately, Starbucks placed Plaintiff on a Performance Improvement Plan ("PIP").   Unwilling to accept any responsibility for his own shortcomings, Plaintiff demanded an independent investigation into "unfair treatment and consciously biased actions and behaviors towards [him]" from his manager.   Although Plaintiff did not at that time (or ever) claim he was treated unfairly on the basis of race, Starbucks takes all allegations of unbiased treatment seriously.   Accordingly, Starbucks engaged a third-party to investigate Plaintiff's "complaint."   However, before the investigation was even complete, Plaintiff resigned from his employment with Starbucks after accepting a higher salaried job at Jack in the Box Inc.   The investigation concluded regardless, finding Plaintiff's claims were unsubstantiated.

Plaintiff now brings the instant lawsuit based on his belief that, simply because he is African American, his treatment by Starbucks was discriminatory and retaliatory.[3]   Plaintiff's supposed "evidence" that race played a role in his employment rests on three theories.   First, Plaintiff alleges he did not receive job offers because he is African American, when, in fact, Plaintiff was unqualified and interviewed poorly for said jobs.   Second, Plaintiff alleges he was not provided the same opportunities for advancement as other, non-African American partners on his team, and was treated unfairly by his supervisor.   However, Plaintiff was afforded numerous opportunities, and one of the partners on Plaintiff's team whom he claims received preferential treatment *is African American*.   Third, Plaintiff claims he was "forced" to resign as a result of his alleged improper treatment.   Yet, none of the conduct of which he complains is conduct that is unusually aggravating and/or amounts to a continuous pattern of objectionable conduct.   Lastly, Plaintiff's retaliation claim fails because he has no evidence to connect his alleged protected activities to any adverse employment actions.   In sum, based on the undisputed facts, Plaintiff cannot establish a single

---

[3] Notably, Plaintiff is a repeat litigant, having filed *an almost identical lawsuit* against another employer with the same counsel representing him in 2009.   RJN ¶ 2, Ex. B.

triable issue of fact as to any of his claims.  Therefore, Starbucks respectfully request the Court grant its motions for summary judgment, or, in the alternative, partial summary judgment.

## II.  RELEVANT FACTUAL SUMMARY

### A.  Plaintiff is Hired as a Licensed Store District Manager.

In August 2011, Plaintiff was hired as a Licensed Store District Manager ("DM") by Angela Rivers ("Rivers"), Regional Director ("RD").  [SUF 3.]  Rivers was Plaintiff's direct supervisor during his entire employment at Starbucks.  [SUF 4.]  Plaintiff was one of three African American DMs on Rivers' 12-person team.  [SUF 5.]  While employed by Starbucks, Plaintiff was familiar with its policies against discrimination and retaliation as well as Starbucks' open door policy outlining procedures for reporting violations of company policies.  [SUF 6, 146.]

As a DM, Plaintiff was responsible for leading an assigned group of Licensed Store management teams within his district.  [SUF 7.]  In addition, Plaintiff was responsible for assessing the overall operation of Licensed Stores, including ensuring Licensed Store compliance with Starbucks Experience standards.  [SUF 8.]  Communication skills are crucial to the DM position because District Managers regularly interface with Starbucks' Licensees and their employees.  [SUF 9.]  In fact, paramount to Starbucks' business model *is communication* with its partners, Licensees, and patrons.  [SUF 10, 11.]

### B.  Plaintiff Unsuccessfully Interviews for a Business Development Manager Position in the Branded Solutions Department.

On April 27, 2014, Plaintiff applied for a Business Development Manager ("BDM") position in the Branded Solutions Department.  [SUF 12.]  Prior to his interview for the BDM position, Rivers supported him by advising the Branded Solutions managers that Plaintiff was applying for the position.  [SUF 13.]  Rivers also notified the interviewers that she suggested to Plaintiff that he should connect with members of the Branded Solutions team.  [SUF 13.]  Plaintiff formally

interviewed with Kelly White, Senior Recruiter; and John Warmke, Regional Manager of Branded Solutions.  [SUF 14, 17.]  Informally, Plaintiff met with Frank Sica, Mr. Warmke's supervisor, to discuss the BDM position.  [SUF 20.]

Plaintiff was not offered the BDM position.  [SUF 21.]  Rather, the feedback from Plaintiff's formal interview was that Plaintiff had to be asked several questions more than once, and still did not adequately address the specific questions he was asked.  [SUF 18,19.]  Plaintiff's interviewers also found he did not have the requisite insight, sales and/or development experience – *i.e.*, Plaintiff was not qualified.  [SUF 15, 16, 18, 19, 24, 25.]  In November 8, 2014, Plaintiff applied for another BDM position, but was not interviewed.  [SUF 32.]

## C. Throughout His Employment, Plaintiff Was Coached for Communication and Performance Deficiencies.

### 1. Plaintiff's Performance Reviews Reflect Consistent and Ongoing Feedback Regarding Plaintiff's Deficiencies.

As early as Plaintiff's September 29, 2011, Assessment, Starbucks identified potential communication and performance areas for Plaintiff to improve on, including: (1) attention to detail; (2) interpersonal style issues that resulted in ineffective communication with others (i.e., he was vocally loud during several meetings); (3) the perception that he was focused on his own agenda; and, (4) making bad decisions (tardiness to three shifts of in-store training, late to one DM visit in District Manager Training, and cancelling a visit during District Manager Training).  [SUF 37, 38, 39.]

While Plaintiff was rated "Above Expectations" for the 2012 review period, he was also advised he had the following opportunities for improvement: "[d]o more work around adjusting for his audience – tends to talk like he thinks and repeats himself rather than just adjusts; [p]eers sometimes wonder if he's listening; [s]hould continue to build strong and valuable 1st team relationships."  [SUF 40, 41.]

For the 2013 review period, Plaintiff was rated at the lower end  of "Meets Expectations."  [SUF 42, 43.]  He was also advised of the following performance

improvement opportunities:

> Continued *focus on listening* for understanding rather than listening to respond. *Ensure you both understand and are understood. Communication is key to success*. Elevate store level issues where conflict or misunderstanding occurs. *Ensure all relevant facts are shared* and a clear picture is painted of problems without rounds of follow up questions required to fully understand situation. *Take time to ask questions to ensure understanding on all sides*. This will minimize opportunity to have integrity questioned. *Focus on team commitments* and execute in manner agreed to (or influence commitment). Once aligned execute in accord with agreement.

[SUF 42, 43 (emphasis added).]

### 2. Licensee Requests Plaintiff's Removal as DM at LAX Marriott.

On May 16, 2014, Rivers received a complaint about Plaintiff from LAX Marriott ("Marriott"). [SUF 44.] Marriott complained about an incident wherein a hotel guest complained to the front desk after witnessing Plaintiff yell at a Marriott's Licensed Store Manager, and make her cry. [SUF 45.] Marriott also complained that when it discussed the incident with Plaintiff, he refused to take responsibility, apologize, or even acknowledge that he did anything wrong. [SUF 46.] Plaintiff did not disclose this incident to Rivers and, in fact, hid the incident from her even though she regularly interacted with him after the incident. [SUF 47.] At the demand of Marriott, Rivers removed Plaintiff from the Marriott account. [SUF 48.]

### 3. Licensees' Complaints About Plaintiff's Communications.

On February 23, 2015, Licensee Ralphs complained to Rivers about Plaintiff because Plaintiff gave inconsistent information and direction to its employees. [SUF 49.] Rivers provided Plaintiff feedback regarding the Ralphs complaint. [SUF 50.]

On May 6, 2015, Licensee Vons complained to Rivers that Vons employees felt harassed by Plaintiff because he sent multiple texts to hourly Licensee employees on their personal cell phones about buying coffee. [SUF 53.] Rivers again coached Plaintiff regarding the Vons complaint. [SUF 54, 55.] On another occasion, Vons

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

complained to Rivers that it was forced to pay an employee to wait two hours for Plaintiff who was late to a scheduled meeting.  [SUF 51.]  Rivers coached Plaintiff about this incident and his lack of communication with a client.  [SUF 52.]

### 4. Plaintiff Improperly Certifies Licensee Employees Causing Store Closure.

District Managers for Licensed Stores are responsible for certifying that baristas of new locations meet Starbucks' standards before the store is permitted to begin business operations.  [SUF 56.]  If a store is not ready to open on a Licensee's preferred date it is the District Manager's responsibility to escalate the issue to the Regional Manager.  [SUF 57.]  In March 2015, Plaintiff improperly certified baristas at a new Residence Inn location.  [SUF 58.]  Starbucks had to close the store and retrain the Licensee employees.  [SUF 58.]  Plaintiff refused to take responsibility for improperly certifying the baristas, and testified the deficiencies were because "the baristas that were there that day ***were handicapped baristas***, meaning they had - - ***they were slower***."  [SUF 59, 60 (emphasis added).]

### 5. Deficient Work Routine, Calendaring, and Accuracy.

In addition to the above detailed performance issues, on numerous occasions Plaintiff was coached regarding deficiencies with respect to his work routine, calendaring, and accuracy of work product.  [SUF 61-69, 76, 77.]

### D. Plaintiff Fails to Improve His Performance Despite Opportunities.

### 1. Personal Development Plan and Peer 360 Reviews.

Most DMs on Rivers' team had a Personal Development Plan ("PDP") outlining their respective goals and aspirations at Starbucks, and strategies for obtaining such goals.  [SUF 70.]  On June 26, 2014, Plaintiff, Rivers and Sarah Rogers ("Rogers"), the Partner Resources Manager[4] working with Rivers' team, met

---

[4] A Partner Resources Manager at Starbucks is the same role as a Human Resources Manager at other companies.  [SUF 71.]

to discuss Plaintiff's development at Starbucks and Plaintiff developing a PDP.  [SUF 22, 23, 72, 73.]  In November 2014, Plaintiff, Rivers and Rogers met again to discuss Plaintiff's progress and to ensure a formal PDP was in place.  [SUF 74.]  At that time, Plaintiff had not completed his PDP.  [SUF 75.]

In December 2014, Plaintiff agreed to participate in a 360 Peer review which was completed in February 2015, which was designed to give him additional insight into how he was perceived by his peers (other partners).  [SUF 78.]  The peer level 360 review corroborated Rivers' assessment of Plaintiff's deficient communication style.  [SUF 79-93.]  Highlights included:

"**Stop:**

- Coming in with his present agenda for the conversation.  At times he seems unwilling to hear what the other person has said if it doesn't fit in with his pack of thinking . . .
- Working while others are presenting. . . .
- Speaking over others . . .
- Acting superior to others . . .
- Saying that he is aligned with team commitments and not follow thru [sic] and/or do it 'his way' rather than staying aligned with the team. . . .
- When he disagrees with RD [Rivers], at times it appears disrespectful . . .
- Slow, or unwilling, to adapt or conform with Team direction . . .
- Telling stories in generalities vs. actual specific examples . . .

**Start:**

- Actively listening more consistently . . .
- Taking the time to listen to feedback of others . . .
- When communicating take additional time to consider what you want the partner to feel as a result of your communication . . .
- Actively listening when others are talking, sharing ideas, presenting, etc.  Consider tone in communication may come across as 'aloof' or arrogant

1    at times . . .

2    • Being more welcoming and generous . . .

3    • Listening to directions, be respectful of others skill sets and experience,

4      be open minded to other ideas . . .

5    • Demonstrate professionalism in all work environments."

6    [SUF 79-93.]

7    Consistent with Plaintiff's continued and utter refusal to accept responsibility

8    for his own deficiencies, his response to the comments of his peers in his 360 review

9    was he "absorbed them," *but did not feel he needed to make adjustments based on the*

10   *feedback*. [SUF 94.]  Plaintiff never drafted his PDP.  [SUF 95.]

11   ### 2.     March 30, 2015 Performance Concerns and Expectations
12            Memorandum.

13   Because Plaintiff's performance deficiencies continued without improvement,

14   on March 30, 2015, Starbucks issued him a Performance Concerns and Expectations

15   Memorandum ("March 30 Memo").  [SUF 96.]

16   ### 3.     Starbucks Places Plaintiff on a PIP.

17   On May 12, 2015, Starbucks placed Plaintiff on a Performance Improvement

18   Plan ("PIP").  [SUF 98.]  On June 4, 2015, Rivers and Heidi Sundquist, another

19   Partners Resources Manager, issued Plaintiff the PIP during an in-person meeting.

20   [SUF 100.]

21   ### E.    Plaintiff Requests an Independent Investigation Into Rivers.

22   Then, on June 9, 2015, Plaintiff had a meeting with Rivers and Sundquist

23   wherein he provided his response to the PIP and demanded that Starbucks conduct an

24   independent investigation into "unfair treatment and consciously biased actions and

25   behaviors towards [him]" by Rivers.  [SUF 101, 102.]  During the meeting, Plaintiff

26   told Rivers and Sundquist that he had recorded everything that was discussed at the

27   meeting without their knowledge and/or consent.  [SUF 103.]  He also told them that

28   he had recorded many of his conversations with them previously without their

knowledge and/or consent.  [SUF 104, 105.]  The earliest Plaintiff alleges he made any complaint about improper conduct at Starbucks was in December 2014.  [SUF 106.]

On June 12, 2015, Starbucks engaged a third party to investigate Plaintiff's claims and his PIP was put on hold pending the outcome of the investigation.  [SUF 107, 108.]  The independent investigator conducted a detailed investigation into Plaintiff's claims.  [SUF 109, 110.]

The independent investigator determined Plaintiff's claims against Rivers were **unsubstantiated**.  [SUF 112-117.]  Specifically, the investigator found:

- "The facts do not show Ms. Rivers engaged in consciously biased actions and behaviors, discrimination or harassment toward Mr. Briscoe. Mr. Briscoe also did not identify race, gender or any other such category as the basis for the treatment. There is no indication Ms. Rivers treated him in a consciously biased way, or that she treated Mr. Briscoe differently than other DMs on her team.

- The facts do not support Mr. Briscoe's claim of unfair treatment. DMs [] who Mr. Briscoe believes are favored by Ms. Rivers, are top performers and/or take advantage of the career development opportunities given by Ms. Rivers, unlike Mr. Briscoe. In addition, Ms. Rivers has given Mr. Briscoe a great deal of recognition and many opportunities for growth and development in his career at Starbucks.

- The facts showed there was a legitimate basis for Mr. Briscoe's PIP [as follows]:

  o At the request of Marriott, in May 2014 Ms. Rivers removed Mr. Briscoe from the Marriott account because of his improper handling of a non-compliance situation at one of its hotels and his failure to accept responsibility for the incident.

  o Mr. Briscoe trained and certified licensed store employees as baristas at the Residence Inn for the New Store Opening (NSO). Ms. Rivers discovered those baristas could not ring up drinks and did not know how to make drinks correctly, and she wanted the store shutdown.

  o Von's [sic] and Ralph's [sic] complained to Ms. Rivers about Mr. Briscoe, including that he "was a jerk" and he failed to attend scheduled meetings with them.

  o Mr. Briscoe repeatedly provided inaccurate data to Ms. Rivers, including incorrect sales figures, even after they discussed the approach on a given topic and how it should be communicated.

  o Despite extensive coaching by Ms. Rivers and PRM Sarah Rogers, Mr. Briscoe failed to accept responsibility for his actions, did not improve in the areas Ms. Rivers coached him about, he was not self-aware and he did not incorporate the feedback they provided."

[SUF 112-117.] *The independent investigator recommended that Starbucks reinstate the PIP.* [SUF 118.] The investigation was completed on July 27, 2015. [SUF 111.]

### F. Plaintiff Resigns After Receiving a Higher Paying Job.

On July 20, 2015, before the independent investigation was completed, Plaintiff resigned from his employment with Starbucks to take a job at Jack in the Box Inc. with a starting salary of $120,000 per annum (not including performance bonuses). [SUF 119-121.] Plaintiff applied for the job at Jack in the Box Inc. the very same week he requested the independent investigation. [SUF 120.] At the time of his resignation, Plaintiff's annual salary at Starbucks was approximately $95,963.64 per annum (not including performance bonuses). [SUF 122.]

### G. Plaintiff Has No Evidence That Any Actions Taken Regarding His Employment Were Related to His Race.

Plaintiff's discrimination claims are based solely on the conduct of one individual, Angela Rivers, and there is no evidence that she treated him differently because of his race. [SUF 13, 21, 26-31, 33-36, 97-99, 123-135.]

#### 1. Coaching and PIP Did Not Relate to Plaintiff's Race.

Plaintiff was placed on a PIP solely due to deficiencies in his communication, performance, routine, and accuracy, as well as Licensee complaints. [SUF 40-100.] Plaintiff's only proffered evidence to support his allegations of racism related to the coaching and PIP is that he "do[esn't] know why things changed . . . I asked that question myself and couldn't get an understanding why I started getting this treatment. So I don't know why." [SUF 124, 125.] While Plaintiff also claims the PIP was

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

1   retaliation for his alleged complaints to Rogers about Rivers, Rivers had provided

2   Plaintiff consistent feedback regarding the deficiencies detailed in the PIP for years

3   (with no improvement from Plaintiff).  In fact, Plaintiff has no knowledge of *who*

4   actually issued, approved and drafted the PIP.  [SUF 126.]  The decision to issue the

5   PIP was actually made in consultation with Partner Resources personnel, *i.e.,* Karen

6   Castro and Heidi Sundquist, not Rivers alone.   [SUF 97-99,127.]   Similar to his

7   discrimination concerns, Plaintiff acknowledges his retaliation belief is based on his

8   purported instincts, *not* on evidence or fact.  [SUF 128.]

9                             **2.     BDM Position.**

10          The only role Rivers had regarding Plaintiff's application to the BDM position

11   was to inform the Business Development managers he was applying.   [SUF 13.]

12   Rivers had no role with respect to evaluating Plaintiff's application, his interview, or

13   his denial of the BDM position.  [SUF 21, 26-31, 36,]   Indeed, Rivers has no hiring

14   authority outside of her team.  [SUF 129.]  Rivers did not know Plaintiff had applied

15   for a subsequent BDM position until this lawsuit was filed.  [SUF 33, 34, 35, 130.]

16              **3.     Opportunities to Other Partners on His Team.**

17          Plaintiff claims Rivers failed to provide him the same opportunities she

18   provided to other non-African American partners on her team.   Yet, Plaintiff testified

19   that one of the partners who received preferential treatment was ***African American***.

20   [SUF 131.]  Plaintiff's own testimony that an African American teammate received

21   preferential treatment belies his allegations of *race* discrimination.   Plaintiff also

22   claims partners on his team received opportunities he did not, including "elevation,"

23   promotion and/or additional responsibilities.    [SUF  132.]    However, Plaintiff

24   acknowledges he either did not apply for such positions, the promotions occurred *after*

25   he resigned from Starbucks, or the people receiving the opportunities were far senior

26   to him at Starbucks.  [SUF 133-135.]

27          Plaintiff also ignores the *considerable* recognition and opportunities Rivers *did*

28   *provide* Plaintiff up to his resignation, including, but not limited to:

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

11.

- Appointment to the Disney Star Team in 2011/12 [SUF 136, 137];

- Nomination as District Manager of the Quarter in 2012/13 [SUF 138, 139];

- Appointment as Annual Operating Plan Pillar Lead in 2014 [SUF 140];

- Selection to highlight and tour one of his locations with the United States Leadership team in 2014 [SUF 141];

- Appointment as Annual Operating Plan Pillar Lead 2015 Our Coffee and Our Food, including Evenings and Refreshment (supporting peer DM) [SUF 142];

- Selection as highlighted in a partner appreciation week in Q2 of 2015 for specific support of a senior leader visit [SUF 143]; and,

- Selection of Plaintiff's USC location for a March 2015 tour with the United States Leadership team [SUF 144].

As such, Plaintiff's suggestion that he was subjected to discrimination because of his race is not supported by the facts.

## III.    STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file…show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56.  A claim has no merit if a defendant demonstrates that one or more of the elements of a cause of action cannot be established.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once a defendant makes such a showing, the burden shifts to the plaintiff to show that a "genuine issue[] of material fact" exists by "produc[ing] at least some significant probative evidence tending to support the complaint." *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990).  A plaintiff may not rely upon the mere allegations in the pleadings to show that a genuine issue exists, but must offer "specific facts showing that there is a genuine issue for trial." *Id.* at 322.

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

## IV. PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW.

### A. Plaintiff's Claim for Discrimination Fails.

Courts analyze discrimination claims under a three-step burden shifting framework. To succeed on a claim of discrimination, a plaintiff must first establish a *prima facie* case of discrimination by showing (1) he is a member of a protected category; (2) he was performing competently in the position he held; (3) he suffered an adverse employment action; and (4) the circumstances suggest a discriminatory motive for the adverse employment action. *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 355 (2000); *Douglas v. Anderson*, 656 F.2d 528, 531 (9th Cir. 1981).

Only once Plaintiff has established the elements of a *prima facie* case does the burden shift to the employer to articulate a legitimate, non-discriminatory reason for the adverse action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973); *Horn v. Cushman & Wakefield Western Inc.*, 72 Cal. App. 4th 798, 805-06 (1999). The plaintiff is then faced with the burden to prove by substantial evidence—***and not by speculation***—that the legitimate reason proffered by the employer was not its true reason, but was merely a pretext for discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802-05. At all times, the plaintiff retains the burden of persuading the trier-of-fact that he was subjected to discrimination. *Id.; Guz*, 24 Cal. 4th at 356.

To meet this initial burden Plaintiff must "produce evidence that, taken as a whole, permits a rational inference that intentional discrimination was a *substantial* motivating factor in the employer's actions toward the plaintiff." *Horsford v. Bd. of Tr. of Cal. State Univ.*, 132 Cal. App. 4th 359, 377 (2005) (emphasis added). Starbucks does not dispute Plaintiff belongs to a protected class. However, Plaintiff cannot establish the remaining elements of his *prima facie* case.

### 1. Plaintiff Cannot Meet His Initial Burden.

#### a. Plaintiff Was Not Performing His Job Duties Satisfactorily.

Plaintiff cannot establish he was performing his job duties in a satisfactory

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

manner.  Indeed, Plaintiff consistently received coaching regarding his performance deficiencies, which increased in severity.  Specifically, Plaintiff received coaching for deficiencies with respect to his work routine, calendaring, accuracy of work product, Licensee complaints, and communication deficiencies that resulted in the March 30 Memo and PIP.  [SUF 40-100.]

### b.  Plaintiff Suffered No Adverse Employment Action That He Can Link to His Race.

Under the Fair Employment and Housing Act ("FEHA"), an "adverse employment action" must materially affect the terms, conditions or privileges of employment.  *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1050-52 (2005).  "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation."  *Thomas v. Dept. of Corr.*, 77 Cal. App. 4th 507, 511 (2000) (citing *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)).  An adverse employment action "must be more disruptive than a mere inconvenience or an *alteration of job responsibilities*."  *Id.* at 511 (emphasis added).  "A change that is merely contrary to the employee's interests or not to the employee's liking is insufficient."  *Akers v. Cnty of San Diego*, 95 Cal. App. 4th 1441, 1445 (2002).  Here, Plaintiff cannot show any causal connection between any alleged adverse employment actions and his race.

### (1)  There Is No Evidence of Any Preferential Treatment Based on Race.

The fact that Plaintiff believes Rivers gave preferential treatment to other partners on her team, *including another African American partner,* is not an adverse employment action.  Additionally, Plaintiff acknowledges *he did not apply* for any of the opportunities or promotions provided his partners (so the fact that he did not receive these opportunities is not persuasive).  [SUF 133-135]; *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981) ("The plaintiff must prove by a

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination."); *McDonnell Douglas Corp.*, 411 U.S. at 802 (holding that in a claim for racial discrimination, the plaintiff must show "that he applied and was qualified for a job for which the employer was seeking applicants" and "that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications").

Even assuming *arguendo* that such treatment amounts to an adverse employment action (it does not), there is no connection to his race given that at least one other partner who received the alleged preferential treatment was the same race as Plaintiff. [SUF 5, 131.] Therefore, such preferential treatment cannot form the basis of discrimination claim.

### (2)   The PIP Was Not An Adverse Employment Action.

Additionally, a written warning or negative review does not rise to the level of an adverse employment action because it has no "effect on the terms and conditions" of employment. *See McRae v. Department of Corrections & Rehabilitation,* 142 Cal. App. 4th 377, 392 (2006) (holding that a letter of instruction did not rise to the level of an adverse employment action). Specifically, courts hold "[e]mployers need to be able to manage employees without fear that routine employment decisions, or attempts at improving employee performance, will lead to litigation." *Id.* at 387. Accordingly, the PIP was not an adverse employment action. *This is especially true given that it was suspended within one day upon Plaintiff's request for an independent investigation and, therefore, never implemented against Plaintiff.* [SUF 107, 108] *Kortan v. Cal. Youth Authority*, 5 F. Supp. 2d 843, 853 (C.D. Cal. 1998), *aff'd*, 217 F.3d 1104 (9th Cir. 2000) (When plaintiff has not articulated a tangible, negative, change in the terms and conditions of her employment resulting from the PIP, plaintiff cannot establish adverse employment action element of *prima facie* case).

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

15.

### (3)   Plaintiff Was Not Constructively Terminated

In order to prove that his voluntary resignation was an adverse employment action, Plaintiff must prove he was constructively discharged because Starbucks "either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of [his] resignation that a reasonable employer would realize that a reasonable person in [his] position would be compelled to resign." *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1251 (1994). Plaintiff will not be able to meet this standard as none of the conduct of which he complains is conduct that is unusually aggravating and/or amounts to a continuous pattern of objectionable conduct. At best, he may argue that he resigned because he was unhappy with his performance management, which does not qualify as an intolerable working condition. [SUF 124.]

### (4)   Plaintiff's Voluntary Resignation Was Not An Adverse Employment Action.

Lastly, Plaintiff cannot prove that his ***voluntary resignation*** qualified as an adverse employment action. In reality, Plaintiff resigned for a ***higher paying job*** and not related to any workplace conduct. [SUF 119-122.] Plaintiff will be unable to prove his *prima facie* case as he cannot tie any alleged adverse employment action to his race.

## 2.   Starbucks' Employment Decisions Were for Legitimate, Nondiscriminatory Reasons.

Even if Plaintiff could establish a *prima facie* claim of discrimination, which he cannot, the burden shifts to Starbucks to only "articulate" a legitimate, nondiscriminatory reason for the personnel decision at issue. *Texas Dep't of Cmty. Affairs*, 450 U.S. at 253-54. In fact, Starbucks need only show evidence of the reason for its actions. *Foster v. Arcata Assocs., Inc.*, 772 F.2d 1453, 1459 (9th Cir. 1985) (overruled on other grounds by, *Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262 (9th Cir.1991)). In conducting this inquiry, the question is not whether the decision was

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

16.

based on correct assumptions, but whether the employer reasonably believed its reasons and validly exercised its business judgment. *Guz,* 24 Cal. 4th at 358. The employer's reasons need not meet the approval of a judge or jury, as long as the decision was not discriminatory. *Douglas*, 656 F. 2d at 534.

While Plaintiff cannot even point to any specific adverse employment actions he suffered, to the extent he is referring to his performance management or lost opportunities/promotions, Starbucks had legitimate business reasons for all such actions (*i.e.,* his extensive performance issues and his failure to even apply for the other opportunities/promotions). [SUF 40-100.] It is well established that an employer may exercise business judgment in making personnel decisions, which the courts should not second-guess. *See Sada v. Robert F. Kennedy Med. Cntr.*, 56 Cal. App. 4th 138, 155 (1997) (*citing Mateo-Woodrum v. Fresno Commty. Hosp. & Med. Cntr.*, 221 Cal. App. 3d 1169, 1184-85 (1990)). Accordingly, Starbucks meets its burden to show that it had a legitimate, nondiscriminatory reason for all actions taken regarding Plaintiff's employment.

### 3.   Plaintiff Cannot Establish Pretext.

To rebut Starbucks' legitimate, non-discriminatory reasons for decisions regarding Plaintiff's employment, Plaintiff must prove that Starbucks' proffered reason was not genuine, and rather just a "cover-up" for discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 805. To survive summary judgment, Plaintiff "must produce '***specific, substantial evidence of pretext***.'" *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994) (citation omitted) (emphasis added); *Horn*, 72 Cal. App. at 807. Protestations of discriminatory motive and intent, without substantial evidence, are inadequate to meet the burden of this prong and cannot create an issue of fact. *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983); *Martin v. Lockheed Missiles & Space Co.,* 29 Cal. App. 4th 1724, 735 (1994) (speculation of discrimination is not "substantial responsive evidence"). An issue of fact cannot be created by mere speculation and conjecture. *Horn*, 72 Cal. App. 4th at 807.

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

17.

It is irrelevant that Plaintiff may disagree with or contest the fairness of the performance-based reasons for his coaching and PIP.   The standard is well-settled an employee ***does not*** meet his burden to rebut an employer's non-discriminatory basis for its employment decision by showing "that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Arteaga v. Brinks, Inc.*, 163 Cal. App. 4th 327, 343 (2008).  FEHA "does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules." *Id.* at 344; *King v. United Parcel Svc.*, 152 Cal. App. 4th 426, 433 (2007) (whether plaintiff actually did commit a policy violation "does not matter ... as long as [the employer] honestly believed she did"); *see also, Carter v. Escondido Union High School Dist.*, 148 Cal.App.4th 922, 929 (2007) ("An employer may discharge an at-will employee for no reason, or for an arbitrary or irrational reason . . . .").   A "plaintiff's evidence must relate to the motivation of the decision-makers to prove, by ***nonspeculative*** evidence, an ***actual causal link*** between prohibited motivation and termination." *King,* 152 Cal. App. 4th at 433-34 (emphasis added) (citing *Saelzler v. Advanced Grp. 400*, 25 Cal. 4th 763, 774 (2001)).   Therefore, Plaintiff's "perception" that race played a role in Starbucks' conduct is inadequate to prove his *prima facie* case of race discrimination.

Here, Plaintiff has no evidence that Starbucks' reasons for its decisions regarding his employment were a pretext for discrimination.   Plaintiff has nothing but his own rank speculation and conjecture to connect Rivers' alleged dislike of him based on his race to his performance feedback and Starbucks' other actions against him.   Unfortunately for Plaintiff, mere speculation is insufficient to create an issue of fact sufficient to defeat summary judgment.   *See Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996).

In fact, the burden of avoiding summary judgment is particularly difficult where – as here –the ***same person*** was responsible for both the allegedly adverse act, as well as

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

18.

favorable acts. "Where the same actor is responsible for both the hiring and firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory motive." *Horn*, 72 Cal. App. 4th at 809; *Nazir v. United Airlines, Inc.*, 178 Cal. App. 4th 243, 272-73 (2009). From the standpoint of the discriminator, it "hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job." *Horn*, 72 Cal. App. 4th at 809, *citing Proud v. Stone* , 945 F.2d 796, 797 (4th Cir. 1991); *accord, West v. Bechtel Corp.*, 96 Cal. App. 4th 966, 980-981 (2002) (applying the "same actor" rule); *Slakin v. Univ. of* Redlands, 88 Cal. App. 4th 1147, 1158 (2001). The "compelling nature of the inference arising from [the "same actor" rule makes] cases involving this situation amenable to resolution at an early stage." *Proud*, 945 F.2d at 797-798.

It is undisputed that Rivers hired Plaintiff as a DM, recommended he apply for the BDM position, provided him resources to further his success at Starbucks, and promoted his career throughout his employment. [SUF 3, 13, 136-144.] It is illogical that Rivers would hire Plaintiff, and attempt to assist his advancement if she disliked Plaintiff because of his race – which had not changed since he was hired in August 2011. The foregoing actions create a "strong inference" that Rivers' later employment decisions were not discriminatory. *Slakin,* 88 Cal. App. 4th at 1158 (granting summary judgment on discrimination claim where dean of school previously supported plaintiff's tenure bid); *Horn,* 72 Cal. App. 4th at 809; *Coghlan v. American Seafoods Co., LLC*, 413 F.3d 1090, 1096-97 (9th Cir. 2005) (strong inference of no discrimination where person who demoted plaintiff was the same person who promoted him earlier). In short, Plaintiff has no basis for believing that Starbucks' proffered reason is pretext, much less the *specific, substantial* evidence required under the law. Accordingly, Plaintiff's discrimination claim fails.

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

19.

**B.      Plaintiff's Retaliation Claim Also Fails.**

Like a discrimination claim, once the employee establishes a *prima facie* case for retaliation, the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the adverse employment decision. *Morgan v. Regents of Univ. of Calif.*, 88 Cal. App. 4th 52, 68-69 (2000). Once the employer meets this burden, the employee must then prove by a preponderance of the evidence that the employer's reasons are pretext for retaliation or that a discriminatory reason more likely motivated the employer's action. *Id.* However, a suspicion of improper motives, based primarily on conjecture and speculation, are insufficient to carry the retaliation burden. *Martin*, 29 Cal. App. 4th at 1735; *Kerr v. Rose*, 216 Cal. App. 3d 1551, 1563-64 (1990), superseded on other grounds.

**1.      Plaintiff Cannot Show Any Causal Connection Between His Alleged Complaints and Any Adverse Employment Action.**

To prove retaliation under the FEHA, Plaintiff must show: (1) he engaged in a protected activity; (2) he experienced an adverse employment action; and (3) there was a *causal link* between his protected activity and the adverse employment action. *Guthrey v. State of Calif.*, 63 Cal. App. 4th 1108, 1125 (1998). Even if Plaintiff can prove that either his December 2014 or June 2015 "complaints" were protected activities, he has no evidence to connect such alleged protected activities to any adverse employment actions. In order to survive summary judgment, it is not sufficient for a plaintiff to simply claim he engaged in protected activity and, thereafter, suffered an adverse employment action. *Morgan*, 88 Cal. App. 4th at 69; *Kortan*, 5 F. Supp. 2d at 853 ("The mere fact that an employee has made a complaint does not create the inference that everything that happens thereafter is a result of that complaint."). Plaintiff must also demonstrate his participation in the protected activity *caused* the adverse employment action. *Id.* To show the requisite causal link, Plaintiff "must present evidence sufficient to raise the inference that [his] protected activity was the **likely** reason for the adverse action." *Cohen v. Fred Meyer, Inc.*, 686

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

20.

F. 2d 793, 796 (9th Cir. 1982) (citing *Hagans v. Andrus*, 651 F.2d 622, 626 (9th Cir. 1981)) (emphasis added).

By Plaintiff's own admission, River's alleged preferential treatment of other employees started in 2014, *before he brought any concerns to Starbucks.* [SUF 422, 423.]  Likewise, Starbucks' performance management of Plaintiff started in August 2011 and was consistently reinforced by Rivers over the years, *well before he brought forward any concerns.*  [SUF 329-390.]  Plaintiff cannot provide any evidence that there was any causal link between his alleged complaints and any adverse employment actions. *Morgan*, 88 Cal. App. 4th at 69-70; *see also Mazalin v. Safeway, Inc.*, 2012 U.S. Dist. LEXIS 16305, at *33 (E.D. Cal. Feb. 8, 2012) (retaliation claim failed because the plaintiff could not establish she would not have been terminated "but for" her protected activity, but rather, "defendant terminated her employment because she violated store policy").  As such, Plaintiff's retaliation claim fails.

### 2. Plaintiff Cannot Demonstrate Pretext to Overcome Starbucks' Legitimate Business Reasons For all Employment Actions.

Even if Plaintiff were able to establish a *prima facie* case of retaliation, as set forth in detail above in Section IV.A.3. *supra*, Starbucks can rebut Plaintiff's showing by offering legitimate, non-retaliatory reasons for its actions.  [SUF 474-535]; *see Flait v. N. Am. Watch Corp.*, 3 Cal. App. 4th 467, 479, at (1992), *reh'g denied and opinion modified* (Mar. 5, 1992); *Clark*, 6 Cal. App. 4th at 664.  Because Starbucks has legitimate, non-retaliatory reasons its actions towards Plaintiff, the burden reverts to Plaintiff to prove pretext.  *Akers*, 95 Cal. App. 4th at 1453.  Plaintiff must present both ***specific*** and ***substantial*** evidence rebutting Starbucks' explanations.  *Horn,* 72 Cal. App. 4th at 807.  As discussed in in Section IV.A.3. *supra*, Plaintiff cannot do so.

Nor can Plaintiff rely upon the temporal proximity between his alleged complaints in December 2014/June 2015, and the alleged adverse employment actions to demonstrate pretext.  Temporal proximity does not, without more, establish that an employer's proffered reasons are pretextual.  *See McRae*, 142 Cal. App. 4th at 388.

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

Mere sequence is not enough. *Chen v. County of Orange*, 96 Cal. App. 4th 926, 931 (2002) (allowing mere sequence as the basis for a retaliation claim "would be the classic logical fallacy of 'post hoc ergo prompter hoc' (after the fact, therefore because of the fact)"). Here, the timing of events itself negates pretext – Plaintiff was coached on the same performance deficiencies for years. [SUF 474-478, 496.] Even if the timing of events actually coincided with Plaintiff's alleged complaints, Plaintiff has no evidence – let alone ***substantial*** evidence – that Starbucks' reasons for its employment actions were false or a pretext for unlawful retaliation. Accordingly, summary judgment is appropriate.

### C.   Plaintiff's Derivative Constructive Wrongful Termination Claim Fails.

A plaintiff may not assert a wrongful termination in violation of public policy claim as a fallback to a statutory claim where the underlying statutory claim itself fails. *TRW, Inc. v. Super. Ct.*, 25 Cal. App. 4th 1834 (1994) (finding that no cause of action for wrongful termination in violation of public policy was stated where the employer did not violate the constitutional or statutory provision asserted as the basis for the claim). Plaintiff's wrongful termination claim is based solely upon his claims for discrimination and retaliation. As these claims are without merit, his claim for wrongful termination in violation of public policy also fails. [SUF 581-725]; *Jennings v. Marralle*, 8 Cal. 4th 121, 135 (1984) (noting that no claim for violation of public policy exists against employers who have not violated the law).

### D.   Plaintiff Cannot Maintain a Claim for Punitive Damages.

Assuming, *arguendo,* the Court concludes Plaintiff has presented sufficient evidence to withstand summary judgment as to some or all of his claims, he still has insufficient evidence to support a claim for punitive damages. "Punitive damages are proper only when the tortious conduct rises to levels of extreme indifference … a level which decent citizens should not have to tolerate." *Tomaselli v. Transamerica Ins*., 25 Cal. App. 4th 1269, 1287 (1994). To state a claim for punitive damages, Plaintiff

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

must prove "by clear and convincing evidence" that Starbucks acted with malice and oppression *through one of its officers, directors, or managing agents*.  CAL. CIV. CODE § 3294(b).  "Managing agents" are "employees who exercise substantial independent authority and judgment over decisions that ultimately determine corporate policy." *White v. Ultramar, Inc.,* 21 Cal.4th 563, 573 (1999).  "Corporate policy" is comprised of "the general principles which guide a corporation, or rules intended to be followed consistently over time in corporate operations." *Cruz v. Homebase*, 83 Cal.App.4th 160, 165 (2000).  Mere supervisory status is insufficient to establish that an employee is a "managing agent" for punitive damages purposes. *Kelly-Zurian v. Wohl Shoe Co.*, 22 Cal. App. 4th 397, 421-22 (1994).  In the instant matter, the only person Plaintiff identified as having engaged in allegedly discriminatory or retaliatory acts is Rivers. [SUF 848.]  Rivers was not an officer or director and did not hold a position with the requisite discretionary authority over corporate policies to qualify them as a managing agent.  [SUF 871, 872, 873]; *White*, 21 Cal. 4th at 577.

Assuming, *arguendo*, that Plaintiff can establish an officer, director, or managing agent engaged in alleged improper conduct or authorized or ratified such conduct, he will still be unable to prove they acted with the requisite fraud, oppression, or malice in regards his employment and, therefore, will be unable to make a claim for punitive damages. CAL. CIV. CODE § 3294(a).  Even when finding liability on the underlying claims, courts have held punitive damages are not recoverable where the employer's conduct does not meet the level of egregiousness required to warrant the award of punitive damages. *See Real v. Continental Group, Inc.*, 627 F. Supp. 434 (N.D. Cal. 1986) (no punitive damages even when court found that company willfully discriminated against employee).

Finally, the California Supreme Court holds an employer's written policy specifically forbidding the discrimination, harassment or other unlawful conduct "may operate to limit corporate liability for punitive damages, as long as the employer implements the written policy in good faith." *White*, 21 Cal. 4th at 568, fn. 2; *see*

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

23.

1  *Kolstad v. American Dental Ass'n*, 527 US 526, 541-43 (1999) (employer's adoption

2  and implementation of written policy against workplace discrimination may shield it

3  from punitive damages liability for discriminatory acts by its managers).   Here,

4  Starbucks maintained policies against discrimination, harassment and retaliation.

5  [SUF 870.]   Furthermore, upon receiving Plaintiff's June 9, 2015, complaint, it

6  immediately followed its policies by undergoing an independent investigation.  [SUF

7  832.]

8       Plaintiff cannot offer any evidence, let alone *clear and convincing evidence*, to

9  demonstrate that Starbucks acted with fraud, oppression, or malice in regards to his

10  employment.  The actions, as testified to by Plaintiff, fall far short of conduct that is

11  "so mean, vile, base, or contemptible that it would be looked down on and despised by

12  reasonable people."  CACI No. 3945.  Accordingly, any claim for punitive damages

13  should be dismissed on summary judgment.

14  **V.     CONCLUSION**

15       For the reasons stated above, Starbucks requests that this Court grant its Motion

16  for Summary Judgment or, in the alternative, Partial Summary Judgment.

17

18  Dated:   May 21, 2018

19
                                    *;s/ Jyoti Mittal*
20                                   TANJA L. DARROW
                                    JYOTI MITTAL
21                                   LITTLER MENDELSON, P.C.
                                    Attorneys for Defendant
22                                   STARBUCKS CORPORATION

23

24  Firmwide:154830445.2 055187.1066

25

26

27

28

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300